UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
JOSE RODRIGUEZ,                          :      08 Civ. 1126 (JCF)
                                         :
                       Plaintiff,        :          MEMORANDUM
                                         :          AND  ORDER
        - against -                      :
                                         :
MICHAEL J. ASTRUE,                       :
Commissioner of Social Security,         :
                                         :
                       Defendant.        :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

        Pursuant to section 205(g) of the Social Security Act, 42

U.S.C. § 405(g), Jose Rodriguez brings this action against the

Commissioner of the Social Security Administration (the "SSA")

challenging the denial of his April 11, 2001 application for

disability insurance and Supplemental Security Income ("SSI")

benefits.   The parties previously stipulated to my exercising

authority over this case for all purposes pursuant to 28 U.S.C. §

636(c).   Arguing that Mr. Rodriguez's claim is time-barred, the

government now moves to dismiss his complaint pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure, or alternatively,

for a order granting summary judgment pursuant to Rule 56(c).   For

the reasons explained below, the government's motion for summary

judgment is granted.

Background

    Mr. Rodriguez was born in the Dominican Republic in September

1947.  (Affidavit of Jose Rodriguez dated Oct. 21, 2008 ("Rodriguez

Aff."), attached as Exh. 7 to Declaration of Patrick J. Herbst

dated Dec. 17, 2008 ("Herbst Decl."), ¶ 2).  He has not had any

substantial formal education and has only a limited ability to read

in Spanish, his native language.  (Rodriguez Aff., ¶ 2).  He

understands only a "few words" in English, and cannot read or write

in English at all.  (Rodriguez Aff., ¶ 2).  Mr. Rodriguez is in

very poor health, and currently receives SSI benefits as a result

of an application filed in November 2002.[1]  (Rodriguez Aff., ¶ 3).

    On April 11, 2001, after filing several previous applications,

Mr. Rodriguez submitted a claim for disability insurance and SSI

benefits.[2]  (Rodriguez Aff., ¶ 4; Decision of Administrative Law

Judge dated May 29, 2002 ("ALJ Decision"), attached as part of Exh.

1 to Herbst Decl., at 1).  Mr. Rodriguez had frequently visited his

local SSA office -- located in the Washington Heights neighborhood

_____

    [1] That claim was approved on April 8, 2003.  (Affirmation of
James M. Baker dated Jan. 29, 2009, ¶ 2 & Exh. E).  Mr. Rodriguez
thus apparently seeks retroactive benefits for the period between
the date he filed the application at issue here and the date he
began receiving benefits pursuant to the later application.  See
Canales v. Sullivan, 936 F.2d 755, 757 n.1 (2d Cir. 1991).

    [2] Although this application was filed on April 11, 2001, the
claim was given a protective filing date of March 14, 2001, such
that if Mr. Rodriguez were successful here, he would recover
benefits retroactive to the earlier date.

of Manhattan -- for assistance with his applications and with the

SSA review process.   (Rodriguez Aff., ¶ 4).   Due to his limited

education, he relied heavily on the SSA staff for guidance and

routinely followed their instructions.   (Rodriguez Aff., ¶ 4).

A hearing was held on May 21, 2002 concerning the April 11,

2001 application.   Mr. Rodriguez was represented at the hearing by

Elena   Estrella,[3]   and   he   testified   before   the   presiding

Administrative Law Judge (the "ALJ") with the aid of a Spanish

interpreter.   (ALJ Decision at 1).   On May 29, 2002, the ALJ issued

a decision denying the claim.   (ALJ Decision).

On June 15, 2002, Mr. Rodriguez sought review of the ALJ's

decision.   (Request for Review of Hearing Decision/Order dated June

15, 2002, attached as Exh. 2 to Herbst Decl.).   In a letter dated

October 12, 2002, the SSA Appeals Council denied this request, thus

upholding the ALJ's determination.   (Field Letter).   After a brief

description of the grounds for the denial, the letter explained

that if Mr. Rodriguez wished to seek further review he must file a

civil action in federal court within sixty days.   (Field Letter at

---

[3] Although Ms. Estrella represented Mr. Rodriguez during his
hearing and was apparently sent copies of the ALJ's decision
(Notice of Decision, attached as part of Exh. 1 to Herbst Decl., at
3) and the decision of the Appeals Council (Letter of Christopher
R. Field dated Oct. 12, 2002 ("Field Letter"), attached as part of
Exh. 2 to Herbst Decl., at 2), there is no further information
concerning her role in the proceedings or her relationship with Mr.
Rodriguez.

1-2). The letter was written in English, but included a page-long explanation in Spanish of the rights of claimants. (Field Letter at 3).

At some point following receipt of the Appeals Council's decision, in either October or November of 2002, Mr. Rodriguez went to the Washington Heights SSA office with the intent to appeal the Appeal Council's decision.[4]   (Rodriguez Aff., ¶ 5). There is no record of exactly what happened that day, although Mr. Rodriguez believed that he had filed an appeal.[5]   (Rodriguez Aff., ¶¶ 5-7; Plaintiff's Memorandum of Law in Opposition to the Commissioner's Motion to Dismiss the Complaint or in the Alternative for Summary Judgment ("Pl. Memo.") at 3). On November 7, 2002, Mr. Rodriguez also filed a new application for benefits because "someone advised [him] that an appeal could take a very long time, and a new application might be approved quickly."[6] (Rodriguez Aff., ¶¶ 5-6).

---

[4] It is undisputed that Mr. Rodriguez filed a new SSI application on November 7, 2002. (Defendant's Statement Pursuant to Local Rule 56.1 ("Def. Facts"), ¶ 5; Herbst Decl., ¶ 4(b) & Exh. 3; Rodriguez Aff., ¶ 6). According to Mr. Rodriguez, however, he went to the SSA office at least twice during this time period; once within "a few days" of receiving the Appeals Council's decision with the intention of filing an appeal, and then again in early November to file a new application. (Rodriguez Aff., ¶¶ 5-6).

[5] Of course, at this point, no further administrative appeals were available to Mr. Rodriguez. The legally correct next step was to seek judicial review in federal court pursuant to 42 U.S.C. § 405(g).

[6] As noted above, this application was ultimately approved.

On March 19, 2003, Mr. Rodriguez returned to the SSA office to inquire about the status of his November 2002 "appeal." (Report of Contact dated March 9, 2003 ("SSA Contact Report"), attached as Exh. 4 to Herbst Decl.; Def. Facts, ¶ 7). The SSA staff member who spoke with Mr. Rodriguez that day was apparently unaware that the plaintiff had already exhausted his administrative appeals. (SSA Contact Report; Def. Facts, ¶ 7). Accordingly, the staff member improperly permitted Mr. Rodriguez to file a second request for review of the ALJ's May 29, 2002 decision. (SSA Contact Report; Def. Facts, ¶ 7).

On December 9, 2004, the Appeals Council sent another letter to Mr. Rodriguez, stating that it would take no further action because it had already denied a request for review of the May 2002 decision. (Letter of M. Collins dated Dec. 9, 2004, attached as Exh. 6 to Herbst Decl.). It seems that this letter was written in English only; there is no Spanish version on file.

According to Mr. Rodriguez, from approximately April 2003 until November 2007, he went to the SSA office "every couple of months" to ask about his appeal. (Rodriguez Aff., ¶ 8). He alleges that SSA staff members repeatedly told him that his appeal was still pending and assured him that the appeals process was a lengthy one. (Rodriguez Aff., ¶ 8). Finally, someone told Mr. Rodriguez that he should have filed a complaint in federal court

(Rodriguez Aff., ¶ 8), so he did.

Proceeding pro se, Mr. Rodriguez commenced the instant case on November 8, 2007.  Subsequently, he retained counsel, and the government filed the instant motion on December 18, 2008.[7]

Discussion

The Social Security Act ("the Act") limits the availability of review of final decisions by imposing a 60-day limit for filing civil claims.  Section 205(g) states:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g).  It is well established that courts must honor this limitations period:  "Congress' determination so to limit judicial review to the original decision denying benefits is a policy choice obviously designed to forestall repetitive or belated litigation of stale eligibility claims.  Our duty, of course, is to

---

[7] Because the parties have relied on materials outside of the pleadings, this motion is most appropriately treated as one for summary judgment, rather than as a motion to dismiss for failure to state a claim.  See, e.g., Rodriguez v. Barnhart, No. 01 Civ. 3411, 2002 WL 31875406, at *2 (S.D.N.Y. Dec. 24, 2002); Guinyard v. Apfel, No. 99 Civ. 4242, 2000 WL 297165, at *1 (S.D.N.Y. March 22, 2000); Sykes v. Apfel, No. 97 Civ. 7696, 1998 WL 338104, at *1 (S.D.N.Y. June 24, 1998) (collecting authorities).

respect that choice."  Califano v. Sanders, 430 U.S. 99, 108 (1977).  In addition, the Supreme Court has indicated that the sixty-day period is a condition of the United States government's waiver of its sovereign immunity.  Bowen v. City of New York, 476 U.S. 467, 479 (1986).  Accordingly, courts must strictly construe this limit, but they must "not . . . 'assume the authority to narrow the waiver that Congress intended,' or construe the waiver 'unduly restrictively.'"[8]  Id. (quoting United States v. Kubrick, 444 U.S. 111, 118 (1979), and Block v. North Dakota, 461 U.S. 273, 287 (1983)).

The Appeals Council's letter in the instant case is dated October 12, 2002, so Mr. Rodriguez was supposed to file his complaint by December 16, 2002.  In fact, he filed his complaint on November 8, 2007 -- close to five years too late.  There is thus no question that Mr. Rodriguez's claim falls outside of the statute of limitations; indeed, the plaintiff does not contest this fact.

---

[8] To implement section 205(g) of the Act, the Commissioner promulgated regulations providing that the sixty-day limitations period begins the day that notice is received.  See 20 C.F.R. § 422.210(c); Matsibekker v. Heckler, 738 F.2d 79, 81 (2d Cir. 1984).  These regulations include a rebuttable presumption relating to receipt: "the date of receipt of notice of denial of request for review of the administrative law judge's decision or notice of the decision by the Appeals Council shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary."  20 C.F.R. § 422.210(c).

Rather, Mr. Rodriguez argues that the limitations period should be equitably tolled due to the "extraordinary circumstances" of his case.  (Pl. Memo. at 1).

The principle of equitable tolling may excuse a claimant's failure to file his complaint on time.  To obtain the benefit of this doctrine, the claimant must demonstrate "both the existence of extraordinary circumstances and a 'causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of the filing.'"  Rodriguez, 2002 WL 31875406, at *3 (quoting Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000)).  The court then considers whether the claimant has both (1) "acted with reasonable diligence during the time period [he] seeks to have tolled," and (2) "prove[n] that the circumstances are so extraordinary that the doctrine should apply." Zerilli-Edelglass v. New York City Transit Authority, 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002)).  Equitable tolling is generally warranted only in "rare and exceptional" circumstances, Molnar v. Legal Sea Foods, Inc., 473 F. Supp. 2d 428, 430 (S.D.N.Y. 2007); however, it is "not infrequently appropriate" in cases involving social security benefits because "Congress intended to be unusually protective of claimants in this area."  Canales, 936 F.2d at 757 (internal quotation marks

omitted).

The plaintiff here contends that he acted with reasonable diligence under the circumstances, given his limitations as a person "handicapped by age, illiteracy, disability, and lack of legal representation." (Pl. Memo. at 9-10). Citing four cases as support, the plaintiff asserts that equitable tolling has been extended to similarly situated claimants. These cases, however, are distinguishable.

First, the claimant in every case cited by the plaintiff filed the complaint on a date considerably closer to the relevant deadline. See Hernandez v. Barnhart, No. 01 Civ. 2349, 2004 U.S. Dist. LEXIS 3404, at *5 (S.D.N.Y. March 4, 2004) (approximately five months after deadline); Rodriguez, 2002 WL 31875406, at *1 (thirty-two days); Laursen v. Massanari, 164 F. Supp. 2d 317, 318-19, 321 (E.D.N.Y. 2001) (approximately three weeks); Hernandez v. Sullivan, 91 Civ. 1836, 1991 WL 243451, at *3 (S.D.N.Y. Nov. 8, 1991) (less than three weeks). Indeed, I am aware of no case where the limitations period was tolled for a period of years.

Furthermore, the claimant in each of those four cases acted more diligently under circumstances more challenging than those Mr. Rodriguez confronted here. For example, like Mr. Rodriguez, the claimant in Hernandez v. Barnhart, filed a new application during the limitations period instead of filing a complaint with the

court.  Hernandez, 2004 U.S. Dist. LEXIS 3404, at *4.  However,

unlike Mr. Rodriguez, that claimant had "significant impairments,

including . . . mental retardation," in addition to being

illiterate and solely Spanish-speaking. Id. at *17-18.  Moreover,

the court found that she was "incapacitated during the relevant

limitations period," which may have prevented her from pursuing

judicial review.  Id. at *18; see also Canales, 936 F.2d at 759

(suggesting that equitable tolling may be appropriate when

"claimant avers incapacity due to mental impairment during the

60-day period").  Yet, within a matter of months, she sought and

obtained legal counsel, and ultimately filed a complaint only about

five months after the deadline.  Hernandez, 2004 U.S. Dist. LEXIS

3404, at *5. Ultimately, the court found these facts would toll the

applicable limitations period because they showed that, in light of

her significant personal limitations, the claimant acted with

"reasonable diligence to preserve her claim."   Id. at *21.

        The facts of Rodriguez v. Barnhart provide another useful

comparison.  The claimant there suffered from depression, mild

mental retardation, and possibly more significant mental

impairments.  2002 WL 31875406, at *4.  However, she managed to

contact the court's Pro Se Office within the limitations period to

request the necessary forms, and she ultimately submitted her

complaint just thirty-two days after the deadline. Id. at *1, 4-6.

Concluding that the claimant had presented sufficient evidence to raise a colorable claim for equitable tolling, the court ordered an evidentiary hearing to determine the full scope of her limitations and how they affected her ability to obtain judicial review in a timely manner.[9]  Id. at *6-7.

To be sure, Mr. Rodriguez faces considerable personal challenges.  These limitations, however, are not insurmountable; indeed, they are not as extensive as those of the plaintiffs in the cases he cites.  For example, although illiterate, Mr. Rodriguez does not allege any fundamental mental disabilities.[10]  Nor does he claim to have been incapacitated at any relevant time.

Mr. Rodriguez fails to demonstrate that he pursued his claim diligently in light of his personal challenges.  Although he showed some assiduousness by repeatedly contacting the SSA office for

---

[9] In deciding that a hearing was necessary, the court in Rodriguez v. Barnhart, noted that "[a]lthough an SSI claimant seeking [equitable tolling] must ordinarily offer a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights, demanding that a mentally-challenged pro se litigant literally plead causality seems unreasonable."  Id. at *5 (quotation marks and citation omitted).

[10] In connection with his April 2001 SSI application, a consultative psychiatrist found that Mr. Rodriguez had a "satisfactory ability to understand, remember and carryout [sic] instructions," even though he showed some signs of anxiety and depression.  (ALJ Decision at 3).  The ALJ likewise concluded that Mr. Rodriguez had no "severe mental impairment."  (ALJ Decision at 4).

assistance, this alone does not show reasonable diligence.  Mr.
Rodriguez could have taken other actions to ascertain the proper
course of action.  For example, there is no indication that he
asked SSA staff, or anyone else,[11] to read him the letter he
received from the Appeals Council.[12]

In addition, Mr. Rodriguez's description of relevant events
is vague.  For instance, he admits that although he meant to appeal
the Appeals Council's decision, he "may have been confused about
the difference between an appeal and a new application."
(Rodriguez Aff., ¶ 6).  Similarly, while Mr. Rodriguez claims to
have regularly followed the exact instructions of SSA staff, his
memory of the specific events surrounding his attempt to appeal is
hazy: in his own words, "these things happened nearly six years ago
and my memory may not be right."  (Rodriguez Aff., ¶ 6-7).  This
degree of uncertainty undermines the plaintiff's claim that he
pursued his rights diligently; in fact, Mr. Rodriguez apparently
does not quite remember what steps he took to pursue his appeal.

Ultimately, Mr. Rodriguez cannot simply blame his five-year
delay on administrative errors:  he had a duty to pursue his claim

---

[11] As noted above, Mr. Rodriguez was represented by a Ms.
Estrella at his administrative hearing.  It is plausible that he
could have contacted her for help reading the letter.

[12] Mr. Rodriguez does not deny receiving the letter from the
Appeals Council with instructions concerning the judicial review
process.

diligently under the circumstances.  In short, unlike the claimants

in the cases he cites, Mr. Rodriguez made the mistake of "sleeping

on [his] rights."   <u>Hernandez</u>, 1991 WL 243451, at *3 (quoting

<u>Chiappa v. Califano</u>, 480 F. Supp. 856, 857 (S.D.N.Y. 1979)).

Equitable tolling is therefore not appropriate.

<u>Conclusion</u>

For the reasons discussed above, the government's motion for

summary judgment is granted and this action is dismissed.  The

Clerk of Court is respectfully requested to enter judgment

accordingly.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          April 1, 2009

Copies mailed this date to:

James M. Baker, Esq.
Center for Disability Advocacy Rights, Inc.
100 Lafayette Street, 3rd Street
New York, New York 10013

Leslie A. Ramirez-Fisher, Esq.
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007